Slip Op. 00-141

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| _____ | : | |
| | : | |
| ACCIAI SPECIALI TERNI S.P.A. and | : | |
| ACCIAI SPECIALI TERNI (USA) | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Before: WALLACH, Judge |
| v. | : | Consol. Court No.: 99-08-00551 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| ZANESVILLE ARMCO INDEPENDENT | : | |
| ORGANIZATION et al., | : | |
| | : | |
| Defendant-Intervenors. : | | |
| _____: | | |

[Motions for Leave to Expand Administrative Record and to Strike Denied.]

Decided: November 1, 2000

Hogan & Hartson, LLP (Lewis E. Leibowitz, T. Clark Weymouth, Craig A. Lewis, and Daniel J. Cannistra), Washington, D.C., for Plaintiffs.

David W. Ogden, Assistant Attorney General; David M. Cohen, Director; U.S. Department of Justice, Civil Division, Commercial Litigation Branch (Michele D. Lynch); Brian K. Peck, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel, for Defendant.

Collier Shannon Scott, PLLC (David A. Hartquist, Kathleen W. Cannon, R. Alan Luberda, and Eric R. McClafferty), Washington, D.C., for Defendant-Intervenors.

**OPINION**

**I**

**INTRODUCTION**

The court has before it a Motion for Leave to Expand the Administrative Record ("Plaintiff's Motion to Expand") on behalf of Plaintiffs[1] Acciai Speciali Terni S.p.A. and Acciai Speciali Terni USA (collectively "AST"), and motions to strike portions of Plaintiff's Reply Brief ("AST's Reply Brief") in its underlying Motion for Judgment Upon the Administrative Record Under USCIT 56.2 ("Plaintiff's 56.2 Motion") made on behalf of Defendant[2] and Defendant-Intervenors[3]. For the reasons set forth below, all three motions are denied.

**II**

**BACKGROUND**

At issue are 84 sales which were omitted from AST's United States sales listing submitted to Commerce in its responses to questionnaires in the antidumping investigation (the "additional sales"). Information on U.S. sales was requested as part of Commerce's antidumping questionnaires. AST did

---

[1]This case challenges the Department of Commerce, International Trade Administration's ("Commerce" or "the Department") <u>Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Sheet and Strip in Coils From Italy</u>, 64 Fed. Reg. 30750 (Dep't Commerce 1999) ("<u>Final Determination</u>").

[2]Defendant's Opposition to the Motion of Acciai Speciali Terni S.p.A. to Expand the Administrative Record and Motion to Strike Matters from the Brief ("Defendant's Opposition and Motion to Strike").

[3]Defendant-Intervenors' Opposition to Motion for Leave to Expand the Administrative Record and Motion to Strike Portions of Brief ("Defendant-Intervenors' Opposition and Motion to Strike").

not provide the information on the additional sales until after the deadline for responding to the relevant questionnaire.[4] Commerce rejected the submission as an untimely questionnaire response. See Final Determination at 30757 n6 (stating that it had at first erroneously cited 19 C.F.R. § 351.301(b)(1), but that "[t]he relevant regulation is 351.301(c)(2)" and that "[w]e subsequently rejected other attempts that AST made to submit this information, pursuant to section 351.302(d) . . . because it was untimely filed.").

Commerce cited AST's failure to timely submit the information on the additional sales as evidence that AST did not cooperate to the best of its ability in its adverse facts available analysis. Final Determination at 30757 ("We find, based on the evidence set out below, AST did not act to the best of its ability in complying with our request for sales data. Because AST submitted these sales only

---

[4]The submission of U.S. sales data was made on February 24, 1999, Final Determination at 30750, only three days prior to verification in Italy, id. at 30757. At oral argument there was discussion of the dates in relation to 19 C.F.R. § 351.301(b)(1)(1998), which allows for submissions to be made to Commerce within seven days of verification. It is clear to the court from footnote 6 of the Final Determination that Commerce did not rely upon § 351.301(b)(1) in rejecting the sales data, but rather upon 19 C.F.R. § 351.301(c)(2)(1998), which provides for time limits on questionnaire responses to be set by the Secretary, and 19 C.F.R. § 351.302(d) (1998) which provides for return to the party without consideration by the Secretary of untimely filed responses. Footnote 6 of the Final Determination reads, in relevant part:

> In initially rejecting AST's submission of additional U.S. sales, we erroneously cited section 351.301(b)(1) of the Department's regulations because AST submitted them later than seven days before the date on which the verification of any person is scheduled to begin. The relevant regulation is 351.301(c)(2). We subsequently rejected other attempts that AST made to submit this information, pursuant to section 351.302(d) of the Department's regulations, because it was untimely filed.

Final Determination at 30757, n6.

three days prior to verification, this information was not provided by the deadline set for AST's responses to Section C of the Department's questionnaire.").

AST claims that "[t]he record in this matter is incomplete because it does not include factual information submitted in the course of the underlying investigation that directly contradicts the arguments now advanced by Defendant and Defendant-Intervenors." Plaintiff's Motion to Expand at ¶ 12. It argues that "[w]ithout an amendment to the administrative record, AST is incapable of responding adequately to erroneous factual assertions made by Defendant and Defendant-Intervenors [that AST stood to benefit from the exclusion of these sales]. Moreover, this factual information would have been part of the administrative record, had Commerce properly accepted these submissions in the underlying proceeding." Id. at ¶ 10.

In its Opposition to Defendant's Motion to Strike Matters from the Brief and Defendant-Intervenors' Motion to Strike Portions of the Brief ("AST's Opposition to Motions to Strike"), AST also claims bad faith on Commerce's part in rejecting the submission as justification for expansion of the administrative record. It states:

> Defendants concede that one of the circumstances justifying expansion of the
> administrative record as certified to the Court is a showing of "bad faith" or "improper
> behavior" by the agency decision-makers. Although Defendants deny improper
> behavior, the administrative record in the case establishes that . . .
>> • [After AST alerted Commerce's analyst to the existence of the
>> additional sales data] Commerce instructed AST to provide the Sales
>> data, and AST submitted and served a complete sales listing for the
>> Additional U.S. Sales two days later . . .

4

- Commerce did not reject the Additional U.S. Sales listing as untimely filed until March 5, 1999, fully nine days after the listing was filed – adequate time for Commerce to have reviewed and analyzed the listing . . .

AST's Opposition to Motions to Strike at 8-9 (footnotes omitted).

## III

## ANALYSIS

### A
**The Additional Sales Are Not Part of the Record as Defined by Statute and Regulation, Nor Should They Be Added to the Record under Relevant Case Law Allowing for Expansion When Commerce Has Acted in Bad Faith.**

### 1
**The Record as Defined by Statute and Regulation Does Not Include the Additional Sales.**

The record is statutorily defined as "a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding . . ." 19 U.S.C. § 1516a(b)(2)(A)(i) (1994). Commerce regulations limit the definition of

the record by excluding material returned to the respondent as untimely.[5] 19 C.F.R. § 351.104(a)(2) (1998).

The additional sales data was returned to AST as an untimely questionnaire response. <u>Final Determination</u> at 30757 n6 ("We subsequently rejected other attempts that AST made to submit this information, pursuant to section 351.302(d) of the Department's regulations, because it was untimely filed.").  AST claims that the record is incomplete because "it does not include factual information

---

[5]The regulation states:

(a) Official record.

(1) In general. The Secretary will maintain in the Central Records Unit an official record of each antidumping and countervailing duty proceeding. The Secretary will include in the official record all factual information, written argument, or other material developed by, presented to, or obtained by the Secretary during the course of a proceeding that pertains to the proceeding. The official record will include government memoranda pertaining to the proceeding, memoranda of ex parte meetings, determinations, notices published in the Federal Register, and transcripts of hearings. The official record will contain material that is public, business proprietary, privileged, and classified. For purposes of section 516A(b)(2) of the Act, the record is the official record of each segment of the proceeding.

(2) Material returned.

. . .

(iii) <u>In no case will the official record include any document that the Secretary returns to the submitter as untimely filed</u>, or any unsolicited questionnaire response unless the response is a voluntary response accepted under § 351.204(d) (see § 351.302(d)).

19 C.F.R. § 351.104 (1998) (emphasis added).

6

submitted in the course of the underlying investigation that directly contradicts the arguments now advanced by Defendant and Defendant-Intervenors." Plaintiff's Motion to Expand at ¶ 12. It cites F. Lli De Cecco Di Filippo Fara San Martino S.p.A. v. United States, 21 CIT 1124, 980 F. Supp 485 (1997) for the proposition that "[t]his court has jurisdiction to amend the administrative record when the administrative record is incomplete." Id. at ¶ 11.

F. Lli De Cecco is distinguishable. There, Commerce had a statutory obligation to include in the administrative record summaries of ex parte communications with Commerce during the course of the investigation. 19 U.S.C. § 1677f(a)(3) (1994); see F. Lli De Cecco, 21 CIT at 1126, 980 F. Supp at 487 and n2. Some phone conversations were memorialized in memos included in the record, but affidavits regarding other phone conversations between Commerce and attorneys for the respondent were omitted. The court stated:

> In the present case . . . Commerce solicited the information from the attorneys by telephone during the investigation. As the affidavits cover only those telephone conversations, plaintiffs claim, and the court agrees, that they are not seeking to add to the record information which was obtained or written after Commerce published the final determination. All of the information in the affidavits was in front of Commerce during the investigation, regardless of whether or not Commerce chose to ignore it.

F. Lli De Cecco, 21 CIT at 1126, 980 F. Supp at 487.

Unlike F. Lli De Cecco, here the material was rejected as untimely filed and is not part of the administrative record as defined by statute and regulation. Commerce had no statutory obligation to

7

include rejected documents in the administrative record, and no similar materials were included in the record.[6]

AST also argues that "[e]ven if Commerce legally may interpret the same statute [§ 1516a(b)(2)(A)] as permitting it to exclude from its own consideration documents that were properly rejected as untimely filed, Commerce does not similarly possesses [sic] the authority to restrict the scope of review of the reviewing courts." AST's Opposition to Motions to Strike at 5.

---

[6]F. Lli De Cecco has not been extended to cover a case involving materials rejected as untimely filed. In Ammex, Inc. v. United States, 62 F.Supp. 2d 1148 (CIT 1999), it was distinguished in a footnote. The court relied upon Commerce's statutory obligation to maintain certain records in F.Lli De Cecco, which did not exist in Ammex. It stated that "in the case at bar Customs did not have a similar statutory duty to memorialize meetings and, apparently, even has an unwritten policy against doing so. In light of this fact, and unlike the situation in F. Lli De Cecco, the absence of such notes or memoranda from the administrative record does not, without more, provide the Court with a reasonable basis to believe that the administrative record is currently incomplete." Ammex, 62 F.Supp. 2d at 1166 n12.

In Sanyo Elec. Co., Ltd. v. United States, 86 F.Supp. 2d 1232 (CIT 1999), the court quoted F.Lli De Cecco in a footnote for the proposition that "a court will only consider matters outside of the administrative record when there has been a 'strong showing of bad faith or improper behavior on the part of the officials who made the determination' or when a party demonstrates that there is a 'reasonable basis to believe the administrative record is incomplete.'" Id. at 1239 n9 (quoting F. Lli De Cecco, 980 F. Supp at 487) (citations omitted).

Finally, in Save Domestic Oil v. United States, No. 99-09-00558, 2000 WL 546672 (CIT 2000), the court cited F.Lli De Cecco for the proposition that matters outside the administrative record are not discoverable without a showing of bad faith or improper behavior on the part of the official who made the determination. Save Domestic Oil, 2000 WL 546672 at *2.

Nothing in this line of cases indicates that material rejected by Commerce as untimely filed, in accordance with 19 C.F.R. § 351.104(a)(2), is to be included in the administrative record.

In support of its argument, AST cites Suramerica de Aleaciones Laminiadas, C.A. v. United States, 14 CIT 366, No. 88-09-00726, 1990 WL 86406 (1990). In Suramerica, the court ordered a submission made by the respondent after the International Trade Commission's deadline for post-hearing briefs added to the administrative record, because it was made to rebut allegations made by the petitioner in its post-hearing brief. In so ordering, the court stated that "[t]here is stated no requirement [in § 1516a(b)(2)(A)] that the information have been accepted or utilized by the agency, and this Court should not insert such a requirement into the statute where Congress did not." Suramerica, 14 CIT at 373, 1999 WL 86406 at *8.

Unlike Suramerica, here the data AST seeks to add to the administrative record will not serve the purpose of rebutting allegations made too late for it to respond.[7] The information was a questionnaire response submitted after the deadline. At the time it was made, the submission was not a rebuttal to any argument to which AST lacked an opportunity to respond in a timely manner at the administrative level.

---

[7]The only "allegation" AST seeks to rebut is Defendant's statement in its opposition to Plaintiff's 56.2 Motion that "Given the significant amount of sales volume that the additional U.S. sales represented . . . ignoring these additional sales would have allowed AST to obtain a more favorable result by failing to cooperate, which would be contrary to both the statute and SAA." Memorandum of the United States in Opposition to the Motion of Acciai Speciali Terni S.p.A. for Judgment Upon the Agency Record at 23 (emphasis added). However, at oral argument the Government stipulated to change the emphasized word "would" in that sentence to "could," thereby eliminating the factual assertion that omitting the data favored AST. In any case, this argument, unlike the allegations in Suramerica, is made at the Court of International Trade, and not at the administrative level.

The statute, as read in conjunction with the regulations, does not require the court to expand the administrative record to include untimely questionnaire responses.

**2**

**Plaintiff Has Not Made the Requisite Showing of
Bad Faith on Commerce's Part**

In its Opposition to Motions to Strike, AST argues for the first time that "inclusion of the disputed filings is further justified in this case to demonstrate bad faith and/or improper behavior by the agency." AST's Opposition to Motions to Strike at 8. It sets forth a statement of facts regarding the events leading to the rejection of the additional sales. In that statement it claims:

> the administrative record in this case establishes that
> - . . . immediately after AST USA discovered the Additional U.S. Sales and well in advance of the sales verifications, AST's counsel contacted the Commerce analyst and alerted her to the existence of such Sales;
> - In response, Commerce instructed AST to provide the Sales data, and AST submitted and served a complete listing for the Additional U.S. Sales two days later . . .

Id. (footnotes omitted).

Since AST made that argument in its Opposition to Motions to Strike, Defendant responded at oral argument. Defendant's counsel quoted from Plaintiff's 56.2 Motion[8], where Plaintiff described the same events. There AST states:

> On February 22, 1999 . . . counsel for AST notified Commerce's case analyst of the discovery of the previously unreported sales. After conferring with more senior Commerce officials, the case analyst advised that, <u>while Commerce had not yet made a decision on whether to accept the new U.S. sales data</u>, AST should file and serve such data as soon as possible, before the commencement of verification.

Plaintiff's 56.2 Motion at 14 (emphasis added).

Counsel for AST stated that the description of the conversation in Plaintiff's 56.2 Motion is accurate. It is accordingly clear that Commerce did not solicit the data from AST at that late date, made no representation that the data would be accepted, and had not made a decision to accept the data at the time it was submitted.

**B**

**It Is Unnecessary to Strike Portions of AST's Motion, So
Defendant and Defendant-Intervenors' Motions Are Denied**

In Defendant's Opposition and Motion to Strike it

---

[8]The court did not review the underlying motions for judgment upon the agency record made by Plaintiff and Defendant-Intervenors prior to the hearing on this Motion, as the disposition here affects the underlying motions. Plaintiff's 56.2 Motion was referred to by Defendant for the limited purpose of rebutting Plaintiff's bad faith argument.

request[s] the Court to strike these documents [which Plaintiff seeks to add to the administrative record] and all references in the reply brief [AST's Reply Brief] to these documents including section III.B of the reply brief because the documents are not part of the agency record in the underlying administrative review, and if considered by this Court, would impermissibly alter the scope of judicial review in this action.

Defendant's Opposition and Motion to Strike at 2.

Similarly, Defendant-Intervenors "move[] to strike section III.B and attachments 1 and 2 of AST's Reply Brief because they contain non-record information." Defendant-Intervenors' Opposition and Motion to Strike at 1.

Motions to strike are extraordinary measures. In re Harrington, 392 F.2d 653, 655 (C.C.P.A. 1968) ("[A] motion to strike the brief of any party to an appeal before this court is an extraordinary remedy and should be granted only in cases where there has been a flagrant disregard of our rules."). As the Court of Claims stated in Dillon v. United States:

> [T]here is no occasion for a party to move to strike portions of an opponent's brief (unless they be scandalous or defamatory) merely because he thinks they contain material that is incorrect, inappropriate, or not a part of the record. The proper method of raising those issues is by so arguing, either in the brief or in a supplemental memorandum, but not by filing a motion to strike.

Dillon v. United States, 229 Ct.Cl. 631, 636 (1981).

That AST's Reply Brief contains arguments about and references to information which is not part of the administrative record does not require striking it from the record. The court can deal with Plaintiff's arguments on their merits, and if they are indeed unsupported by the administrative record,

12

then those arguments will have no weight in the underlying Motions for Judgment on the Agency Record. See Jimlar Corp. v. United States, 10 CIT 671, 673, 647 F. Supp. 932, 934 (1986) ("This court, however, has held that, depending upon the circumstances of the particular case, it is appropriate to strike an entire brief, to strike improper portions of a brief, or, to disregard any objectionable matter contained in the brief."). Defendant and Defendant-Intervenors' Motions to Strike are denied.

## IV

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Expand and the Motions to Strike made by Defendant and Defendant-Intervenors are denied.

_____
Evan J. Wallach, Judge

Dated:       November 1, 2000
              New York, New York